UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                      - against -

HECTOR DOMINGUEZ-GABRIEL,

                      Defendant.
------------------------------------------------------------X

09 CR 157 (RPP)

**OPINION AND ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      By papers dated December 2, 2010, Defendant Hector Dominguez-Gabriel moves to suppress the telephone recordings and other evidence obtained pursuant to an eavesdropping warrant based on the authority of Franks v. Delaware, 438 U.S. 154, 165 (1978). The motion is based on the contents of an affidavit in support of the application for authorization to intercept wire communications executed by Robert Perez, a special agent of the Drug Enforcement Administration (DEA) dated December 8, 2006, seeking authority to intercept wire communications of the Target Subjects over the cellular telephone with the call number (718) 688-5117, Push-to-Talk number 173*850*13706, subscribed to a "Frankie Moore," with an address of 37-53 83rd Street, Jackson Heights, NY 11372.

   **I.  Facts**

      The affidavit states that the "Target Offenses" are conspiracies involving the importation, distribution, and possession with intent to distribute of controlled substances in violation of 21 U.S.C. §§ 841, 843(b), 846, 952, 960 and 963 and the laundering of proceeds derived through the distribution of illegal narcotics in violation of 18 U.S.C. §§ 1956 and 1957 being committed by the

"Target Subjects" Hector Dominguez-Gabriel, Martin (LNU), John Bellefleur also known as Kinko, Thomas Beltrez, Efrain (LNU), and others as yet unknown. (Perez Aff. ¶ 3).

Agent Perez states in his affidavit that his information is based on information supplied by a confidential informant (CI) who has provided reliable information to the DEA in the past that was corroborated by independent sources and who states: first, that Dominguez-Gabriel, based in Mexico, had asked the CI to travel to New York to supervise his operations in New York since he did not have a Visa to travel to the United States and second, that the CI had been asked by Dominguez-Gabriel to contact "Kinko," a Dominican male in New York for an introduction to other members of his organization in New York City. Dominguez-Gabriel provided the CI with Kinko's telephone number (Target Cell Phone). Id. at ¶ 18. The CI stated that Dominguez-Gabriel had told the CI that his organization had suffered a seizure of $1,200,000 in the New York City area. Id.  Agent Perez confirmed with the Westchester District Attorney Office that approximately $1.2 million had been seized on or about September 28, 2006. Id. On October 14, 2006 the CI met with Kinko, also known as John Bellefleur, in a hotel in Manhattan where Bellefleur stated that he used over twenty different bank accounts in order to launder drug proceeds. Id. at ¶ 19. Bellefleur also expressed intent in purchasing 100 kilograms of cocaine that had been sent from Mexico to the United States and stated he had a New York City detective working for the organization who makes sure nothing happens to him. Id. at ¶ 20. This conversation was recorded.

On October 17, 2006, the CI met with the "New York City detective," Thomas Beltrez, who told the CI that he had been a "New York State investigator" for 14 years and that he had "many contacts that owe him favors." Id. at ¶ 21. Beltrez also told the CI that he could obtain license plate information. Id.

The affidavit then goes on to describe how the CI, under the direction of the DEA, had thereafter picked up bags of cash from unidentified males or females on a number of occasions in

November and December 2006. Id. at ¶ 22-23, 25. In one of these instances, packages of U.S. currency were removed by Efrain (LNU) from a concealed compartment behind a car door panel. Id. at ¶ 25. Dominguez-Gabriel told the CI that this money belonged to Martin (LNU) the supplier of the drugs. Id. Furthermore on November 30, 2010, Dominguez-Gabriel, in a telephone conversation, told the CI that there was a load of cocaine in the New York City area which would be provided to Bellefleur in quantities of two or three kilos at a time. Id. at ¶ 24. In a later telephone conversation, Dominguez-Gabriel changed the quantity to 10 kilos at a time. Id.

In another conversation on the Target Cell Phone, Dominguez-Gabriel had instructed the CI to tell Bellefleur about the need to have a garage to transfer the cocaine in a car trap. Id. at ¶ 27. Bellefleur displayed a familiarity with traps in cars and transferring proceeds from a trap and suggested a garage was not needed for a safe transfer. Id. at ¶ 28.

**II.  The Motion**

The defense motion first asserts that Perez made false statements in the affidavit intentionally or recklessly because he stated that Dominguez-Gabriel was unable to travel to the United States in the summer of 2006 because he did not have a Visa, whereas recently defense counsel became aware, on information and belief, that the Defendant was in fact able to travel to New York during this period. Second, the motion asserts that Agent Perez avers that Bellefleur told the CI that a New York City Detective was working for the organization and that the CI met with the "New York City Detective" Thomas Beltrez who stated he was a New York State Investigator for 14 years and had many contacts that owed him favors, but did not reveal to the Court that Beltrez was *not* a New York City detective or a New York State Investigator, a fact defense counsel should have known when the affidavit was signed on December 8, 2006.

**III. Decision**

Neither of these arguments is valid. First, in these two statements Agent Perez is not shown to have misled the issuing judge. His affidavit makes clear that these statements were made to him by the CI in recounting statements made by Mr. Dominguez-Gabriel and in a recorded conversation with a person who was later identified as Thomas Beltrez. Second, even if they were misleading, they are not relevant to the issuing judge's determination that there was probable cause to issue the authorization for wiretapping the Target Cell Phone under 18 U.S.C. § 2510-22.

Regarding the statement of the CI's conversation with Mr. Dominguez-Gabriel, the Perez affidavit contains recorded conversations of the CI which amply support the Court's granting of authorization to record conversations over the Target Cell Phone used by Kinko.

First, the CI stated that the Defendant gave him the cell phone number to call "Kinko" to be introduced to the drug organization. Id. at ¶ 18. Second, the CI met with Kinko in a hotel room in which Kinko expressed an interest in purchasing "100 kilos" at "17-5" which had been sent from Mexico to the U.S. Id. at ¶ 19-20. Third, at Defendant's instruction, the CI, under surveillance, had a meeting with UM-1 and received a bag containing approximately $20,000 in U.S. currency and met with an UF-1 from whom he received a bag containing approximately $39,780 in U.S. currency. Id. at ¶ 22-23. Fourth, on or about November 30, 2006, Dominguez-Gabriel told the CI that Kinko should receive 2-3 kilograms of cocaine at a time from a load of cocaine in the New York City area. Later, Dominguez-Gabriel increased that number to 10 kilograms at a time. Id. at ¶ 24. Fifth, in December 2006, the CI called Dominguez-Gabriel and explained that individuals who had money to deliver needed a garage to transfer the money from a trap in a car. Id. at ¶ 27. Dominguez-Gabriel told the CI to call Kinko. Id. The CI called the cell phone number and, in a recording, Kinko showed a familiarity with traps in cars and gave advice on how to handle the transfer of the money. Id. at ¶ 28.

Telephone records showed that the Target Cell Phone called two numbers that Dominguez-Gabriel had given the CI. During the toll period the Target Cell Phone had called one number twice and the other number 49 times. Id. at ¶ 29.

This information was sufficient probable cause for the issuing judge to believe that the Target Cell Phone was being used to engage in conversations relating to the proceeds of narcotics transactions and distribution. See United States v. Martin, 426 F.3d 68, 73-74 (2d Cir. 2005); United States v. Coreas, 419 F.3d 151, 155 (2d Cir. 2005).

IT IS SO ORDERED.

Robert P. Patterson, Jr.

U.S.D.J.

Dated:  New York, New York

December 15, 2010

*nunc pro tunc*
12/6/10

5

Copies of this order were faxed to:

**Robert Joel Krakow**
Office of Robert J. Krakow
1205 Franklin Avenue
Suite 110
Garden City, NY 11530
(516) 354-3300
Fax: (646)-349-1771

**Michael Max Rosensaft**
United States Attorney SDNY 1 Saint Andrew
Department of Justice
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2366
Fax: (212)-637-2527

**Benjamin Naftalis**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2456
Fax: (212) 637-2527