USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: 8/21/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
HECTOR DOMINGUEZ-GABRIEL

Petitioner,

-against-

UNITED STATES OF AMERICA,

Respondent.
---------------------------------------------------------------X

14-CV-3775 (RPP)
09-CR-157 (RPP)

**OPINION & ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On May 16, 2014, Hector Dominguez-Gabriel ("Petitioner" or "Dominguez-Gabriel"), pro se, filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and twenty-year prison sentence for conspiring to commit money laundering and to import and distribute narcotics. (Mot. To Vacate, Set Aside or Correct Sentence Pursuant to 28. U.S.C. [§] 2255 (the "Petition" or "Pet."), 09-CR-157, ECF No. 125, 14-CV-3775, ECF No. 1.) In his motion, Dominguez-Gabriel contends that he received ineffective assistance of counsel at trial; that he was denied a fair trial because certain evidence was admitted without being properly authenticated and in violation of the Confrontation Clause; that there was insufficient evidence to support his conviction; that his sentence was unreasonable; and that the Government committed prosecutorial misconduct at trial. (Id. at 21-28; 29-37; 38-46; 47-49; 51-56.) For the reasons stated below, Dominguez-Gabriel's Petition is DENIED.

## I. FACTUAL BACKGROUND[1]

### A. Criminal Proceedings

On February 19, 2009, the Government filed an Indictment charging Dominguez-Gabriel

[1] Because the factual and procedural history of this case was discussed at length in the Court's Opinion dated April 25, 2011, denying Dominguez-Gabriel's motion for a judgment of acquittal and for a new trial, see United States v. Dominguez-Gabriel, No. 09-CR-157, 2011 WL 1545105 (S.D.N.Y. Apr. 25, 2011), the Court recounts the history of this case only as is necessary to dispose of the pending issues.

with two drug conspiracies, one to distribute cocaine in the United States ("Count Two") and another to import cocaine into the United States ("Count Three"), and conspiracy to commit money laundering ("Count One"). (See Sealed Indictment, 09-CR-157, ECF No. 2.) A Superseding Indictment was filed on January 12, 2010. (Superseding Indictment ("Indictment"), ECF No. 31.) Count One charged Dominguez and co-defendant Manuel Alexander Araujo ("Araujo") with conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B) and (a)(2)(B). Count Two charged Dominguez and Araujo with conspiracy to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. Count Three charged Dominguez and Araujo with conspiracy to import five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. §§ 812, 846, 959(a), 960(a)(3), and 960(b)(1)(A).

Trial began on December 6, 2010 before this Court. The Government set out to prove that Dominguez was "at the center of a large international drug conspiracy." (Trial Tr. ("Tr.") at 1226, ECF No. 64-65.) At trial, the Government relied primarily upon the testimony of Araujo, who began cooperating with the Government after his arrest on February 20, 2007. See United States v. Dominguez-Gabriel, No. 09-CV-157 (RPP), 2011 WL 1545105, at *1 (S.D.N.Y. Apr. 25, 2011). Araujo testified that his first drug deal with Dominguez-Gabriel was in approximately 2001, and provided detailed testimony of Dominguez-Gabriel's participation in money laundering and drug conspiracies. Id. at *1-6. Araujo's testimony was corroborated with transcripts of ten recorded calls between Araujo and Dominguez-Gabriel, ranging from December 2006 to February 21, 2007, in which Araujo and Dominguez-Gabriel discussed the purchase and sale of narcotics and their methods for laundering narcotics proceeds. Id. at *1-2. The Government also presented testimony from David Marin, a second cooperating witness who

was involved in the cocaine importation and distribution conspiracies, see id. at *6-7, and DEA Intelligence Research Specialist Eileen Moynahan, who testified about post-arrest statements made by Dominguez-Gabriel. Id. at *7-8.

The Government also presented testimony from Special Agent Gregory Tanella, who testified about the investigation of Dominguez-Gabriel and Araujo. Agent Tanella testified that he believed the investigation into Dominguez-Gabriel was initiated because of information provided by Miguel Duarte, a confidential informant, in October 2006. (Tr. at 239.) Duarte never appeared at trial, and Dominguez attempted to request he appear only near the end of the Government's case-in-chief. (Tr. 1014-16, 1196-97.) The Government argued against the inclusion of a missing witness charge in the jury instructions as to Duarte, arguing that the Defendant "gave no notice to the Government that he wished to call Mr. Duarte . . . [and] had the Government been given any notice, it would have endeavored to make Mr. Duarte available," and further, that the Defense did not show that Duarte would have given material testimony. See Dominguez-Gabriel, 2011 WL 1545105, at *13 n.6 (emphasis in original). However, at the request of the Defense, the Court included a missing witness charge in the jury instructions over the Government objection. Id. at *13.

On December 14, 2010, a jury found Dominguez-Gabriel guilty as to all counts of the Indictment. The Court sentenced Dominguez-Gabriel to concurrent terms of imprisonment of twenty years on Count One, 120 months on Count Two, and 120 months on Count Three. On February 18, 2011, Dominguez-Gabriel filed a motion for a new trial and for a judgment of acquittal (Mot. for New Trial and J. of Acquittal, ECF No. 72), which this Court denied in an Opinion and Order on April 25, 2011. Dominguez-Gabriel, 2011 WL 1545105, at *1.

### B. The Appeal

Dominguez-Gabriel, proceeding both through counsel and pro se, appealed his conviction on multiple grounds. United States v. Dominguez-Gabriel, 511 F. App'x 17 (2d Cir. 2013). In his appeal, Dominguez-Gabriel argued, among other things, that the district court erred in failing to give a multiple conspiracies charge; that hearsay statements by non-testifying government informant Miguel Duarte were erroneously admitted, in violation of the Sixth Amendment's Confrontation Clause; and that the Government's alleged failure to produce Duarte at trial violated his right to compulsory process. Id. at 19-21. On February 4, 2013, the Second Circuit, in a summary order, rejected each of Dominguez-Gabriel's claims, and affirmed Dominguez-Gabriel's sentence of imprisonment. Id. The Supreme Court denied Dominguez-Gabriel's petition for a writ of certiorari on May 20, 2013. Dominguez-Gabriel v. United States, 133 S. Ct. 2402 (2013).

### C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence

On May 16, 2014, Dominguez-Gabriel timely filed the instant § 2255 motion, proceeding pro se.[2] (Pet.) The Government filed a letter in opposition to Dominguez-Gabriel's petition on May 28, 2014. (Letter Response in Opp'n by U.S.A. ("Opp'n Letter"), 09-CR-157, ECF No. 126.) On July 1, 2013, Dominguez-Gabriel submitted a reply in response to the Government's

[2] On December 17, 2013, Dominguez-Gabriel also submitted a motion for a new trial pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure. (Mot. for a New Trial, 09-CR-157, ECF No. 112.) On January 13, 2014, this Court issued an order construing Dominguez-Gabriel's motion as a habeas petition under 28 U.S.C. § 2255, giving Dominguez-Gabriel the opportunity to notify the Court in writing, within sixty days, should he object to the Court's designation of his motion as a § 2255 petition. (Order, 14-CV-95, ECF No. 2.) Dominguez-Gabriel timely notified the Court that he did not want his December 17, 2013 motion to be construed as a § 2255 petition, and accordingly, the Court construed the motion as pursuant to Rule 33(b)(1), but denied the motion, finding that no relief was available to Dominguez-Gabriel under Rule 33(b)(1). (Op. & Order, Feb. 14, 2014, 09-CR-157, ECF No. 121.) The Anti-terrorism and Effective Death Penalty Act of 1996 places stringent limits on a prisoner's ability to bring a second or successive applications for a writ of habeas corpus under § 2255. See Adams v. United States, 155 F.3d 582, 583 (2d Cir. 1998) (per curiam). However, because Dominguez-Gabriel's December 17, 2013 motion did not remain designated as a habeas petition, Dominguez-Gabriel did not lose his one opportunity within the limitations period for a full adjudication of claims under § 2255. See id. at 584.

Letter. (Reply to Gov't Letter ("Pet'r's Reply"), 14-CV-3775, ECF No. 2.)

# I. LEGAL STANDARD

## A. The Law Governing Petitions Under 28 U.S.C. § 2255

28 U.S.C. § 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Relief is available under § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." U.S. v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation and citation omitted). Because Dominguez-Gabriel is preceding pro se, the Court is obligated to construe his § 2255 motion liberally in his favor. See, e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) ("We see no reason why the general rule [affording liberal construction of pro se pleadings] should not apply to pro se motions filed pursuant to section 2255.").

In applications for collateral relief under § 2255, "two separate rules regarding claim preclusion based on prior adjudication apply." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010. The first is the "mandate rule," which bars re-litigation of issues that were resolved, either explicitly or implicitly, on direct appeal. Id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006) ("[T]he trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals.") (internal quotations and citations omitted).

The second rule "prevents claims that could have been brought on direct appeal from

being raised on collateral review," unless the petitioner can show both cause and actual prejudice. Yick Man Mui, 614 F.3d at 54 (citing Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993); see also Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992) ("We now hold that failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice.").

In the context of § 2255 petitions involving claims of ineffective assistance of counsel, the mandate rule bars re-litigation of the "strategies, actions, or inactions of counsel that gave rise to an ineffective assistance claim adjudicated on the merits on direct appeal." Yick Man Mui, 614 F.3d at 57. However, "there is an important exception to the procedural default rule" for ineffective assistance claims. Id. at 54. The Supreme Court has held that the "failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro v. United States, 538 U.S 500, 508 (2003); Zhang v. U.S., 506 F.3d 162, 166 (2d Cir. 2007) (claim of ineffective assistance of counsel generally not waived when petitioner fails to raise issue on direct appeal).

**B. The Law Governing Ineffective Assistance of Counsel Claims**

To establish a claim for ineffective assistance of counsel, a defendant must: (1) demonstrate that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" from the alleged dereliction in counsel's performance. Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984).

In evaluating counsel's performance, "a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Venturella, 391 F.3d 120, 135 (2d Cir. 2004) (internal quotation

and citation omitted.) "[A] reviewing court must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690) (other internal citation omitted).

In addition to demonstrating an unreasonable error by counsel, a petitioner must show that the deficiency in counsel's performance had an effect on the result; that is, that the error was prejudicial to the petitioner. Strickland, 466 U.S. at 691-96. To demonstrate prejudice, the petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694. A petitioner cannot establish prejudice by merely showing that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

## II. DISCUSSION

### A. Ineffective Assistance Claims

Dominguez-Gabriel raises numerous claims based on ineffective assistance of counsel, including claims based on: (1) counsel's purported failure to object to the admission of hearsay testimony in violation of the Confrontation Clause; (2) counsel's purported erroneous advice regarding Dominguez-Gabriel's right to testify on his own behalf; and (3) counsel's failure to call several defense witnesses. (Pet. at 19, 21-28.) Because all of Dominguez-Gabriel's ineffective assistance claims are either attempts to re-litigate issues that were previously raised and rejected on direct appeal, or are otherwise without merit, these claims do not entitle Dominguez-Gabriel to relief under § 2255.

### *1. Claim Related to Prejudicial Hearsay*

First, Dominguez-Gabriel argues that trial counsel erred in failing to object to hearsay testimony from Miguel Duarte, which he argues was admitted in violation of the Confrontation Clause. (Pet. at 21-26.) This argument fails because Dominguez-Gabriel also argued on his appeal that inadmissible or prejudicial evidence was admitted at trial. See United States v. Dominguez-Gabriel, 511 F. App'x 17, 20 (2d Cir. 2013). The Second Circuit rejected Dominguez-Gabriel's argument, holding that:

> Dominguez-Gabriel's challenge to hearsay statements by non-testifying government informant Miguel Duarte merits little discussion.
>
> Dominguez-Gabriel's failure to object to these statements at trial limits our review to plain error. See United States v. Gore, 154 F.3d 34, 41 (2d Cir. 1998). We identify none. No different conclusion is warranted by defendant's claim that he was unaware of Duarte's informant status until the close of the government's case. The record shows that defendant was aware of Duarte's status from the very start of trial, as evidenced by his counsel's opening statement to the jury.
>
> Further, insofar as many of the challenged statements were deliberately elicited by defense counsel as part of an overall strategy to focus the jury's attention on the informant, such conduct constitutes a true waiver of any hearsay objection, precluding appellate review even for plain error. See United States v. Terry, 702 F.2d 299, 317 (2d Cir. 1983); see also United States v. Quinones, 511 F.3d 289, 321 (2d Cir. 2007).
>
> Finally, Dominguez-Gabriel cannot show any error, let alone plain error, in the admission of questions posed—rather than statements made—by Duarte, as these do not constitute hearsay. See Fed. R. Evid. 801(a)(c). Moreover, statements attributed by co-conspirator Manuel Alexander Araujo to Dominguez-Gabriel rather than to Duarte were admissible as declarations of a party opponent under Fed. R. Evid. 801(d)(2).
>
> Accordingly, defendant is entitled to no relief on his hearsay challenge.

Id. Because the mandate rule "precludes re-litigation of issues impliedly resolved by the appellate court's mandate," Yick Man Mui, 614 F.3d at 53, this Court is barred from considering Dominguez-Gabriel's hearsay argument, which he has re-characterized as an ineffective assistance claim.

Moreover, the Second Circuit's analysis and rejection of Dominguez-Gabriel's argument that hearsay testimony was erroneously admitted at trial demonstrates that the claim is lacking in substantive merit. Dominguez-Gabriel cannot successfully argue that his trial counsel's failure to make a meritless objection to the admission of Duarte's testimony gives rise to an ineffective assistance claim. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) (an attorney's "[f]ailure to make a meritless argument does not amount to ineffective assistance").

*2. Claim Related to Dominguez-Gabriel's Right to Testify on His Own Behalf*

Dominguez-Gabriel next argues that his trial counsel provided erroneous advice regarding Dominguez-Gabriel's right to testify on his own behalf. (Pet. at 26-27; Pet'r's Reply at 1-4.) Specifically, Dominguez-Gabriel argues that "Mr. Dominguez told counsel that he wanted to testify in his own defense to tell the Jury [sic] that he was not a drug distributor" (Pet. at 26), and that trial counsel "refused to call him to the stand despite repeated pleas to do so." (Id. at 27.)

As Dominguez-Gabriel argues, a defendant in a criminal case has a constitutional right to testify on his own behalf. See Rock v. Arkansas, 483 U.S. 44, 49 (1987) ("[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."). "Although counsel has the right, and indeed the professional duty, to advise his client of the benefits and pitfalls of a decision to take the stand on his own behalf, the ultimate decision regarding whether to testify belongs to the defendant." Brown v. Artuz, 124 F.3d 73, 78 (2d Cir. 1997) (internal citation omitted), cert. denied, 522 U.S. 1128 (1998). However, in contrast to other fundamental rights, such as the right to plead not guilty, an on-the-record colloquy is generally not conducted when a defendant waives the right to testify. See id. at 79 ("[T]he judge need not intervene when counsel announces that the defendant rests and the

defendant has not testified.").

In the case of an ineffective assistance claim based on trial counsel's alleged failure to allow a defendant to testify, courts have recognized that a self-serving affidavit, alleging such a failure, is insufficient to establish that counsel was ineffective. See id. at 80-81; United States v. Castillo, 14 F.3d 802, 805 (2d Cir. 1994) (defendant failed to establish involuntary waiver of right to testify with affidavit alleging he was unaware of right), cert. denied, 513 U.S. 829 (1994); Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991) (Posner, J.) (A "barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It is just too facile a tactic to be allowed to succeed."); see also id. at 476 ("[T]he defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand."); Siciliano v. Vose, 834 F.2d 29, 30-31 (1st Cir. 1987) (Breyer, J.) (hearing not required based on defendant's allegation "in conclusory fashion, that his attorney refused to allow him to 'testify in [his] own behalf'"). Here, Dominguez-Gabriel has provided no more than his own affidavit to support his claim that trial counsel refused to allow him to testify. (See Pet. at 26-27; Aff. of Hector Dominguez-Gabriel dated May 6, 2014 ("Dominguez-Gabriel Aff.") ¶ 2.) Such a "barebones assertion," without corroborating evidence, is insufficient to establish that counsel committed any misconduct or to warrant a hearing on the issue. See Underwood, 939 F.2d at 475-76.

Further, as in the case of any ineffective assistance claim, a petitioner who argues that counsel was ineffective for overriding the defendant's right to testify must satisfy the two-prong test established in Strickland—that is, the petitioner must establish both defective performance

and prejudice. See Brown, 124 F.3d at 80. Here, even if the Court were to assume counsel's performance was deficient, the prejudice prong of the Strickland test is not met, as there is no showing that the verdict in this case would have been different had Dominguez-Gabriel been permitted to testify.[3] See id. at 81 (denying ineffective assistance claim where petitioner argued he was prevented from testifying, noting that "[e]ven if [petitioner] had made such statements on the stand, however, there is no reasonable probability that the verdict would have been different.").

### *3. Claim Related to Dominguez-Gabriel's Right to Call Witnesses*

Finally, Dominguez-Gabriel argues that his trial counsel was ineffective because he failed to call the following people as witnesses: Miguel Duarte; his wife, Angela Maria Montoya de Duarte; Abelardo Espinoza; and Israel Espinoza. (Pet. at 27-28.) Dominguez-Gabriel argues that Duarte, had he been called to testify, would have "corroborated Mr. Dominguez's testimony [that he was not a drug distributor]"; that Duarte's wife would have provided testimony "in regards to Mr. Dominguez [sic] money transfer business"; and that the Espinozas would have testified "that they were not drug dealers, and that they were owners of a cleaning business."

---

[3] Dominguez-Gabriel stated in his petition that, had he been able to testify at trial, he would have told the jury:

(1) That he was not a drug distributor;

(2) That he did not know certain players in the conspiracy;

(3) That "De Garay City did not even exist on the world map, let alone in real life" (which Dominguez-Gabriel asserts could have been proven with a "MapQuest printout" that his counsel would not introduce to support his argument); and

(4) That he "was a legitimate businessman who transferred money to and from different countries including the United States and Mexico."

(Pet. at 26-27.) Given the overwhelming evidence presented by the Government at trial to establish Dominguez-Gabriel's involvement in narcotics and money-laundering conspiracies, and given the lack of proof offered by Dominguez-Gabriel in his petition to corroborate the above statements, Dominguez-Gabriel does not meet the prejudice prong of Strickland. There is no reasonable probability that Dominguez-Gabriel's verdict would have been different, had Dominguez-Gabriel made such statements on the stand. See Brown, 124 F.3d at 81.

(Id.)

Dominguez-Gabriel's claims about his counsel's failure to call these purported witnesses fall into two categories, and all are without merit. First, Dominguez-Gabriel's claim regarding his counsel's failure to call Duarte fails because it was litigated on direct appeal and is therefore barred from consideration by this Court. As discussed in Section III(A)(1) of this Opinion, supra, the Second Circuit ruled that the Defense was "aware of Duarte's status from the very start of trial" and that the Defense's treatment of Duarte was "part of an overall strategy to focus the jury's attention on the informant." Dominguez-Gabriel, 511 F. App'x at 20. In response to Dominguez-Gabriel's assertion that he was denied his constitutional right to compulsory process by the government's refusal to produce Duarte as a witness, the Second Circuit rejected his claim because "nothing in the record indicates that the government took actions to render Duarte unavailable," id. at 20-21, and further held:

> We need not pursue this point further, however, because Dominguez-Gabriel's argument fails for a more fundamental reason: he does not show how Duarte's testimony would have been favorable to his defense. See Howard v. Walker, 406 F.3d 114, 132 (2d Cir. 2005); see also United States v. Valenzuela-Bernal, 458 U.S. 858, 781 (1982). To the extent Dominguez-Gabriel argues that Duarte could have provided material testimony about a meeting attended by the two men in Columbia, the record indicates that the meeting concerned drug distribution and money laundering, circumstances unlikely to be favorable to Duarte. In sum, in the absence of an "effort to explain what material, favorable evidence" Duarte would have provided, Dominguez-Gabriel's Sixth Amendment challenge fails on the merits. United States v. Valenzuela-Bernal, 458 U.S. at 874 (emphasis added).

Id. at 21. Because the mandate rule bars re-litigation of the "strategies, actions, or inactions, of counsel that gave rise to an ineffective assistance claim adjudicated on the merits on direct appeal," Yick Man Mui, 614 F.3d at 57, the Court is barred from considering the Defense's decision not to call Duarte as a witness.

Dominguez-Gabriel's claims as to his counsel's failure to call Duarte's wife, Abelardo

Espinoza, and Israel Espinoza are not barred by the mandate rule, but these claims are also meritless. Similar to the Second Circuit's finding regarding Duarte, Dominguez-Gabriel has failed to establish how the testimony of any of these witnesses would have been favorable to his defense. Without such a showing, Dominguez-Gabriel can neither demonstrate deficient performance by his trial counsel, nor can he establish prejudice. See Strickland, 466 U.S. at 689 (judicial scrutiny of counsel's performance "must be highly deferential," particularly when considering matters of trial strategy); id. at 694 (prejudice showing requires "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

**B. Claims Related to Transcripts of Wiretap Intercepts**

Dominguez-Gabriel also argues that he was denied a fair trial because transcripts of wiretap intercepts were admitted without being properly authenticated under Rule 901 of the Federal Rules of Evidence and in violation of his Confrontation Clause rights. (Pet. at 29-37.) This claim was raised on Dominguez-Gabriel's direct appeal (see Pro Se Appellant Br. at 23-33, June 1, 2012, Case No. 11-3483-CR, Doc. No. 48), and rejected by the Second Circuit, see Dominguez-Gabriel, 511 F. App'x at 21, and therefore it is barred from consideration here by the mandate rule.

Additionally, Dominguez-Gabriel's claim related to transcripts of wiretap intercepts fails on the merits. The "line sheets" referenced by Dominguez-Gabriel in his petition—that is, summaries of intercepted calls prepared by monitoring agents—were never shown to the jury, as both the Government and the Defense relied on transcripts of a selection of the intercepted calls at trial, which were prepared by a federally certified Spanish interpreter. (Gov't Opp'n at 9; Tr. at 162.) These transcripts were properly authenticated by the certified interpreter (see Tr. at 164-

67), and Dominguez-Gabriel does not cite any errors in the transcripts that could have tainted jury deliberation.

Dominguez-Gabriel's Confrontation Clause argument similarly has no merit. The certified translator who personally prepared the transcripts testified at trial and was subject to cross-examination regarding her preparation (see id.), and therefore, Dominguez-Gabriel's Sixth Amendment confrontation rights were not violated.

For these reasons, there was no error in the admission of the authenticated transcripts of the recordings. See United States v. Charlaca, 95 F.3d 239, 246 (2d Cir. 1996) ("The decision to receive in evidence English translations of foreign language transcripts lies in the discretion of the district court.").

**C. Claims Related to Sentencing**

Dominguez-Gabriel also argues that his sentence was unreasonable. (Pet. at 47-49.) Again, this claim is barred because Dominguez-Gabriel unsuccessfully challenged his sentence on appeal (see Pro Se Appellant Br. at 49-52), and the Second Circuit rejected his claim. See Dominguez-Gabriel, 511 F. App'x at 21. Moreover, Dominguez-Gabriel's twenty-year sentence was well below the applicable Guidelines range and was not unreasonable.

**D. Claims Related to Prosecutorial Misconduct**

Dominguez-Gabriel next argues that the Government committed prosecutorial misconduct by introducing false, fabricated, and perjured testimony and that the Government willfully withheld evidence from the Defense. (Pet. at 51-56.) Specifically, Dominguez-Gabriel argues that the Government allowed the assertion of the name "Pablo" in the English-language transcripts of certain exhibits in an attempt to mislead the jury (id. at 52); that the Government knowingly introduced false testimony from its primary witness, Araujo (id. at 54); that the

Government knew of various corruption allegations against Agent Tanella, who testified for the Government (id. at 53); and that the Government willfully destroyed a tape recording of a conversation between Duarte and Dominguez-Gabriel that Dominguez-Gabriel claims would have been favorable to his defense. (Id. at 55.)

All of Dominguez-Gabriel's claims related to prosecutorial misconduct are without merit. First, most of these claims are barred by the procedural default rule, which "prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice." Yick Man Mui, 614 F.3d at 54 (citing Marone, 10 F.3d at 67 ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.")). Dominguez-Gabriel has not established cause for his failure to raise claims related to prosecutorial misconduct on direct appeal. Dominguez-Gabriel's claim regarding the Government's alleged refusal to produce an audio recording of Duarte was raised on direct appeal (see Pro Se Appellant Br. at 18-21, 39), but is barred by the mandate rule, because this claim was rejected by the Second Circuit. See Dominguez-Gabriel, 511 F. App'x at 21. Furthermore, Dominguez-Gabriel has not provided adequate support for any of his claims of prosecutorial misconduct, nor has he provided the Court with reason to believe he was actually prejudiced by any alleged misconduct. His claims do not rise to the level of "constitutional error, [] lack of jurisdiction in the sentencing court, or [] error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice," for which § 2255 relief was contemplated. See Bokun, 73 F.3d at 12.

**E. Claims Related to the Sufficiency of the Evidence**

Finally, Dominguez-Gabriel argues that there was insufficient evidence to support

Dominguez-Gabriel's money laundering and narcotics conspiracy convictions. (Pet. at 38-46.) Dominguez-Gabriel raised this exact claim on direct appeal (see Pro Se Appellant Br. at 38-49), and therefore, he is barred from re-litigating the claim in a habeas petition. Yick Man Mui, 614 F.3d at 57. Further, the Second Circuit's rejection of Dominguez-Gabriel's arguments regarding the sufficiency of the evidence on direct appeal demonstrates that the arguments are substantively meritless.

## III. CONCLUSION

For the reasons stated above, Dominguez-Gabriel's habeas petition is DENIED. As Dominguez-Gabriel's habeas petition makes no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

IT IS SO ORDERED.

Dated: New York, New York
August 21, 2014

Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Opinion were sent to:**

Hector Dominguez-Gabriel
Reg. No. 86202-004
Federal Medical Center – Devens
P.O. Box 879, Unit G-B
Ayer, MA 01432

**Benjamin Naftalis**
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2456
Fax: (212) 637-2527
Email: benjamin.naftalis@usdoj.gov